IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| MARY BARKSDALE,<br>as Administratrix of the Estate of<br>Farron Barksdale, Deceased<br><br>Plaintiff,<br><br>v.<br><br>ARNOLD HOLT, former Warden,<br>Kilby Correctional Facility,<br><br>JOHN DOE I and II, Correctional<br>Officers, Kilby Correctional Facility,<br><br>JOHN DOE III and IV, Medical/<br>Mental Health Services Personnel,<br>Kilby Correctional Facility<br><br>DR. MICHAEL ROBBINS,<br>Kilby Correctional Facility,<br><br>DR. JOSEPH McGINN,<br>Kilby Correctional Facility,<br><br>MHM Correctional Services, Inc.<br><br>Defendants. | CIVIL ACTION NO.<br>2:08-cv-00441-CSC<br><br>JURY TRIAL DEMANDED |

### FIRST AMENDED COMPLAINT

Mary Barksdale, as Administratrix of the Estate of Farron Barksdale, deceased, by and through counsel, brings this First Amended Complaint against Defendants Warden Arnold Holt, John Doe I, II, III, and IV, Dr. Michael Robbins, Dr. Joseph McGinn, and MHM Correctional Services, Inc. ("the Defendants").

## INTRODUCTION

1. This is an action brought under 42 U.S.C. § 1983, the Alabama Medical Liability Act, § 6-5-480 and § 6-5-540, and Alabama common law, arising from the death of Farron Barksdale. Farron Barksdale died twelve days after being admitted to Kilby Correctional Facility in Mt. Meigs, Alabama due to the deliberate indifference, medical neglect, and negligence of the Defendants. Mr. Barksdale was medicated with an unusually large dose of psychotropic medications that made his body unable to withstand high temperatures, confined to an isolation cell with a medically dangerous degree of heat, and left there without adequate monitoring. He fell into a coma and died.

2. The Defendants' actions and inactions proximately caused Mr. Barksdale's death, in violation of the Eighth and Fourteenth Amendments of the United States Constitution, the Alabama Medical Liability Act, and Alabama common law.

## JURISDICTION AND VENUE

3. This action is brought, *inter alia*, pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and the aforementioned constitutional and statutory provisions.

4. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the medical malpractice and negligent hiring claims since these claims are so related to the claims in the § 1983 civil rights action that they form part of the same case and controversy.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and other applicable law because the cause of action arose in Mt. Meigs, Alabama, which is situated within the district and divisional boundaries of the Middle District of Alabama. In addition, venue is proper in this Court because the Department of Corrections is headquartered in Montgomery County, which is situated within the district and divisional boundaries of the Middle District of Alabama.

## PARTIES

6. Plaintiff MARY BARKSDALE is the Administratrix of the estate of her deceased son, Farron Barksdale. On August 11, 2007, just four days after his admission to Kilby Correctional Facility, Farron Barksdale was found unconscious in his segregation cell. For the next eight days, Mr. Barksdale was

in a coma. On August 20, he died. The autopsy report listed Mr. Barksdale's cause of death as "complications of bronchopneumonia" with contributing factors of "hyperthermia and coagulopathy." The report states: "The exact etiology of the hyperthermia is uncertain but most likely is related to drug therapy."

7. Defendant ARNOLD HOLT was the Warden at Kilby Correctional Facility at all times pertinent to this action. Warden Holt was responsible for the daily functioning and administration of Kilby, including the safe, secure and humane treatment of all prisoners incarcerated there. Warden Holt was responsible for ensuring that measures to reduce heat exposure risks for prisoners taking psychotropic medications were initiated and maintained at Kilby. Warden Holt deliberately disregarded a serious and known risk to Farron Barksdale's health and safety. Warden Holt is sued in his individual capacity.

8. JOHN DOE I was a correctional officer employed at Kilby Correctional Facility at all times pertinent to this action. John Doe I failed to monitor Farron Barksdale; failed to monitor cell temperatures in the segregation unit; failed to notify the unit Commander/Captain of the cell temperatures; failed to provide increased amounts of fluids and ice to Mr. Barksdale; failed to allow additional showers to provide cooling; failed to follow established guidelines; and/or failed to take other steps to ensure the health and safety of Farron Barksdale.

John Doe I's actions and inactions in this regard were undertaken with deliberate indifference to Farron Barksdale's health and safety. John Doe I is sued in his individual capacity.

9. JOHN DOE II was a correctional officer employed at Kilby Correctional Facility at all times pertinent to this action. John Doe II failed to monitor Farron Barksdale; failed to monitor cell temperatures in the segregation unit; failed to notify the unit Commander/Captain of the cell temperatures; failed to provide increased amounts of fluids and ice to Mr. Barksdale; failed to allow additional showers to provide cooling; failed to follow established guidelines; and/or failed to take other steps to ensure the health and safety of Farron Barksdale. John Doe II's actions and inactions in this regard were undertaken with deliberate indifference to Farron Barksdale's health and safety. John Doe II is sued in his individual capacity.

10. JOHN DOE III was a medical and/or mental health services employee at Kilby Correctional Facility at all times pertinent to this action. John Doe III failed to monitor Farron Barksdale's condition after he was prescribed antipsychotic medications. John Doe III failed to follow established guidelines and failed to take steps to protect Farron Barksdale from the significant risk of hyperthermia. John Doe III's actions and inactions in this regard were undertaken with

deliberate indifference to Farron Barksdale's health and safety. John Doe III is sued in his individual capacity.

11. JOHN DOE IV was a medical and/or mental health services employee at Kilby Correctional Facility at all times pertinent to this action. John Doe IV failed to monitor Farron Barksdale's condition after he was prescribed antipsychotic medications. John Doe IV failed to follow established guidelines and failed to take steps to protect Farron Barksdale from the significant risk of hyperthermia. John Doe IV's actions and inactions in this regard were undertaken with deliberate indifference to Farron Barksdale's health and safety. John Doe IV is sued in his individual capacity.

12. DR. MICHAEL ROBBINS served as a doctor for persons at Kilby Correctional Facility at all times pertinent to this action. Dr. Robbins was responsible for the administration and provision of medical care services to persons at Kilby. Dr. Robbins' actions and inactions with respect to Farron Barksdale were contrary to the standard of care in the medical community and the guidelines of his profession. Dr. Robbins' actions and inactions were undertaken with deliberate indifference to Farron Barksdale's health and safety. He is sued in his individual capacity.

13. DR. JOSEPH McGINN is a psychiatrist who worked at Kilby Correctional Facility and was an employee of Defendant MHM Correctional Services, Inc. at all times pertinent to this action. Dr. McGinn's duties included ensuring the quality and adequacy of mental health care services provided to prisoners at Kilby. Dr. McGinn failed to provide Mr. Barksdale with necessary and appropriate care. Dr. McGinn's actions and inactions were undertaken with deliberate indifference to Farron Barksdale's health and safety. Dr. McGinn is sued in his individual capacity and as the employee and agent of Defendant MHM Correctional Services, Inc.

14. MHM Correctional Services, Inc. ("MHM") is a corporation organized under the laws of Delaware with its principle place of business located in Vienna, Virginia. MHM is the statewide provider of mental health services for the Alabama Department of Corrections. At all times material hereto, MHM was responsible for providing mental health services to prisoners at Kilby Correctional Facility, including the decedent Farron Barksdale. MHM was the employer and principal of Defendant McGinn.

15. At all times relevant herein, the above-named Defendants acted under color of state law and on behalf of the Alabama Department of Corrections.

## FACTUAL ALLEGATIONS

16. Farron Barksdale was 32 years old when he died. He had schizophrenia. Prior to his incarceration, he had been repeatedly hospitalized for treatment of this condition.

17. On August 6, 2007, Farron Barksdale was sentenced to a term of life imprisonment without the possibility of parole for killing two police officers. On or about August 8, 2007, Mr. Barksdale was transported from the Limestone County Jail to Kilby Correctional Facility in Montgomery County, Alabama.

18. Prior to Mr. Barksdale's departure from Limestone County Jail, he was in good physical health. A physical examination conducted immediately prior to transport revealed no evidence of trauma of any kind.

19. While at the Limestone County Jail, Mr. Barksdale's mental illness was ultimately managed without antipsychotic medication.

20. During the intake procedure at Kilby Correctional Facility, it was noted that Mr. Barksdale had a "psychiatric history." It was also noted that he was hearing voices. The screening nurse called for a psychiatric consult due to Mr. Barksdale's "paranoia."

21. Dr. McGinn prescribed Mr. Barksdale a number of medications, including Navane (an antipsychotic medication), Cogentin (an antiparkinsonian

medication), Triavil (an antipsychotic/antidepressant medication), and Seroquel (an antipsychotic medication).

22. Navane, Cogentin, and Seroquel create heat-intolerance in the human body. The manufacturer of Navane warns that: "Navane should be used with caution in patients who might be exposed to extreme heat." The manufacturer of Cogentin warns that Cogentin "should be administered with caution during hot weather," and warns that "[s]evere anhidrosis and fatal hyperthermia have occurred" in patients taking this medication. The manufacturer of Seroquel warns that "[a]ppropriate care is advised when prescribing Seroquel for patients who will be experiencing conditions which may contribute to an elevation in core body temperature, e.g., exercising strenuously, exposure to extreme heat, receiving concomitant medication with anticholinergic activity, or being subject to dehydration."

23. The Defendants were aware of the risks of psychotropic medications and heat-related illness. Alabama Department of Corrections ("ADOC") Administrative Regulation ("AR") 619-1-1, Change # 1 (November 23, 2005) states:

> ADOC will ensure inmates prescribed psychotropic medication with side effects that may cause sensitivity to sustained elevated temperatures and/or direct sunlight are protected from these potential health risks.
>
> Efforts will be taken to ensure that inmates receiving certain first generation Antipsychotics . . . are not exposed to sustained elevated temperatures or extended periods of direct sunlight. Individuals on this type of medication

9

have increased sensitivity to sunlight and are at risk for heat induced syndromes, such as heat stroke, hyperthermia, dehydration, and heat prostration.

24. AR 619 requires prison personnel to take certain steps to protect people taking psychotropic medications from excessive heat. Specifically, when the temperature in a cellblock exceeds 90 degrees, AR 619 requires personnel to: monitor cell temperatures; notify the unit Commander/Captain of the cell temperatures; provide increased amounts of fluids and ice to prisoners taking psychotropic medications; allow additional showers to provide cooling; and consider placing inmates taking such medications in air-conditioned areas. John Doe I, II, III, and/or IV deliberately disregarded these procedures, thereby causing Mr. Barksdale's death.

25. Kilby Correctional Facility has a unit for prisoners with mental illness. It is air conditioned. Mr. Barksdale was not placed in the mental health unit. Instead, he was placed in isolation in an area of the prison without air conditioning.

26. According to the National Weather Service, temperatures in Montgomery were 103 degrees on August 8, 2007, 104 degrees on August 9, 2007, and 106 degrees on August 10, 2007. The temperature was again 106 degrees on August 11, 2007, the date on which Mr. Barksdale was found unresponsive in his cell.

27. On August 11, 2007, a "code-white" was called in Seg-E dorm at 12:40 p.m. Correctional officers and/or prisoners pushed Mr. Barksdale in a wheelchair toward the infirmary. He was "snoring and moaning," according to records prepared by medical personnel. His eyes were rolling back in his head and he was not responding to touch. Upon arrival in the infirmary, he did not respond to ammonia to the nostrils. His temperature was 103.1 degrees.

28. At 12:50, Mr. Barksdale was still "snoring" and was unresponsive. Medical personnel contacted Defendant Dr. Robbins. The appropriate response for any physician in this situation would be to obtain emergency care as soon as possible. Dr. Robbins instead informed medical personnel to "watch inmate for next 20 minutes."

29. Thirty minutes passed. At 1:20, Mr. Barksdale was still "snoring" and unresponsive. Only then did Dr. Robbins authorize Mr. Barksdale to be taken to the emergency room.

30. An ambulance was called at 1:30. The ambulance arrived at 2:00.

31. Mr. Barksdale was taken to Baptist Medical Center South Hospital where he remained for eight days. He never regained consciousness. He died on August 20, 2007.

32. The autopsy report listed Mr. Barksdale's cause of death as "complications of bronchopneumonia" with contributing factors of "hyperthermia and coagulopathy." The report states: "The exact etiology of the hyperthermia is uncertain but most likely is related to drug therapy."

33. The autopsy report also showed that Farron Barksdale's body was covered in brusises.

34. Plaintiff has made every reasonable effort to investigate the facts and circumstances surrounding the death of Farron Barksdale. To date, however, the Department of Corrections has refused to provide the Plaintiff with any documents or photographs relating to Mr. Barksdale's death. The foregoing factual allegations are made, upon information and belief, based upon the information available to Plaintiff to date. Plaintiff expressly reserves the right to amend the allegations contained herein and to add additional Defendants, and hereby places the Defendants and the Department of Corrections on notice of such.

## CLAIM I

### Violation of Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (Deliberate Indifference to Serious Medical Need)

35. Plaintiff incorporates herein and re-alleges, as if fully set forth herein, all factual allegations set forth in ¶¶ 1-2 and 6-34.

36. Defendants' policies, practices, acts, and omissions placed Farron Barksdale at unreasonable and foreseeable risk of serious medical injury and death.

37. Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

38. Defendants implemented, sanctioned, approved, ratified, or failed to remedy policies, practices, acts and omissions that denied, delayed or intentionally interfered with Plaintiff's health and safety.

39. Defendants' policies, practices, acts, and omissions constituted deliberate indifference to the serious medical needs of Plaintiff and violated the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the Untied States Constitution. As a proximate result of Defendants' illegal and unconstitutional policies, practices, acts and omissions, Farron Barksdale died.

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) Assume jurisdiction over this action;

(b) Grant Plaintiff a trial by jury;

(c) Declare that the acts and omissions described herein violated Farron Barksdale's rights under the Constitution and laws of the United States;

(d) Enter judgment in favor of Plaintiff for compensatory (or, in the alternative, nominal) and punitive damages, as allowed by law, against each Defendant, jointly and severally;

(e) Award Plaintiff the costs of this lawsuit and reasonable attorneys' and expert fees pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law;

(f) Order such additional relief as this Court may deem just and proper.

## CLAIM II

### Violation of Al. Code § 6-5-480 et seq. and § 6-5-540 et seq.

(Wrongful Death Caused By Medical Malpractice)

40. Plaintiff adopts and incorporates by reference the allegations and facts alleged above in paragraphs 1-2 and 6-34.

41. On the dates and in the manner specifically alleged herein, the medical services and treatment provided to Farron Barksdale by Dr. Michael Robbins and Dr. Joseph McGinn fell below the applicable standards of care, in that these Defendant physicians failed to exercise such reasonable care, diligence and skill as other health care providers in the same general neighborhood, and in the

same general line of practice, ordinarily would have exercised in a like case, to-wit:

a) From approximately August 9 through August 11, 2007, during a prolonged heat wave that saw temperatures well into the 100's in and around Kilby Correctional Facility, Dr. McGinn, acting in his individual capacity and as the agent and employee of Defendant MHM, prescribed and administered to Mr. Barksdale the prescription drugs Navane, Cogentin, Triavil, and Seroquel, but failed to take necessary precautions to prevent well-known heat-related side effects of these medications when administered to patients exposed to hot weather and dehydration, including: (i) failure to order that Mr. Barksdale be transferred to the air-conditioned mental health unit during the ongoing August 2007 heat wave; (ii) failure to order that he be monitored periodically for elevations in his core body temperature; (iii) failure to order that he be monitored periodically for heat-related side effects of these medications; (iv) failure to order that he be given increased fluids and ice and allowed to take additional showers to protect against the heat-related side effects of these medications; and/or (v) failure to supervise members of the mental health staff at Kilby in the performance of the acts described in (i)-(iv) supra.

b) On or around August 11, 2007, Dr. Robbins (i) failed to take steps to prevent Farron Barksdale from developing hyperthermia; (ii) failed to recognize that Mr. Barksdale was having an adverse reaction to the medications prescribed and administered at Kilby Correctional Facility; and (iii) failed to take appropriate action to have Mr. Barksdale emergently evaluated and treated at a hospital despite the fact that Mr. Barksdale was found non-responsive in his cell, snoring and moaning, with a temperature of 103.1 degrees.

42. Had Defendant McGinn acted pursuant to the requisite standards of care as described above, he would have prevented Mr. Barksdale from developing the adverse drug reaction and related medical conditions that caused his death.

43. Had Defendant Robbins acted pursuant to the requisite standard of care as described above, Mr. Barksdale would have received evaluation and treatment sooner, thereby preventing his death.

44. At all times material hereto, the circumstances that caused Farron Barksdale's death on August 20, 2007 were preventable through adherence to well-established, safe, available medical procedures.

45. Dr. Robbins's and Dr. McGinn's acts and omissions as specifically described above proximately caused the death of Farron Barksdale on August 20, 2007.

WHEREFORE, ABOVE PREMISES CONSIDERED, Plaintiff demands all damages permitted by law, including punitive damages, against Defendants Robbins and McGinn in an amount to be determined fair, just, and adequate by a jury, plus all recoverable costs, fees, and expenses.

## CLAIM III

### Wrongful Death Caused By Negligent Hiring

46. Plaintiff incorporates herein and re-alleges, as if fully set forth herein, all factual allegations set forth in paragraphs 1-2 and 6-34.

47. At all times material hereto, Defendant MHM employed Defendant McGinn to provide psychiatric services including the prescription and administration of antipsychotic medications, to the mental health patient-prisoners residing at Kilby Correctional Facility.

48. Dr. McGinn was acting within the scope of his employment for MHM at all times relevant to this action, including when he prescribed medications to Farron Barksdale.

49. At the time MHM hired Dr. McGinn, it knew or should have known that:

   a) Dr. McGinn had a history of repeated and explicit acts of medical negligence involving the prescription and administration of controlled substances and drugs;

b) Dr. McGinn's license to practice medicine was revoked by the State of Virginia on or around November 11, 1997; and

c) Dr. McGinn was not fit to be placed in the position of providing psychiatric care and services to men at Kilby Correctional Facility.

50. Notwithstanding being on notice of Dr. McGinn's history, as more fully described in Exhibit A, MHM hired Dr. McGinn to provide psychiatric care and services to the inmates at Kilby Correctional Facility.

51. As described more fully in Claim II above, Dr. McGinn, consistent with his past history of medical neglect in the prescription of controlled substances and drugs, did negligently prescribe and administer antipsychotic medications to Mr. Barksdale at Kilby Correctional Facility.

52. As a proximate result of the negligent hiring of Dr. McGinn by MHM, Mr. Barksdale died on August 20, 2007 after succumbing to hyperthermia caused by drugs prescribed by MHM agent and employee Dr. McGinn.

WHEREFORE, ABOVE PREMISES CONSIDERED, Plaintiff demands all damages permitted under law, including punitive damages, against Defendant MHM in an amount to be determined fair, just, and adequate by a jury, plus all recoverable costs, fees, and expenses.

Respectfully submitted this 27th day of June, 2008.

        s/Sarah Geraghty

JAKE WATSON
Alabama Bar No. ASB-4716-M42
228 Holmes Avenue, N.E., Suite 300
Huntsville, Alabama 35801
Telephone: (256) 536-8373
Facsimile: (256) 536-8349
Watson@watsongraffeo.com

HERMAN WATSON, JR.
Alabama Bar No. ASB-6781-074H
Watson, Jimmerson, Martin,
McKinney, Graffeo & Helms, P.C.
203 Greene Street
Post Office Box 18368
Huntsville, AL 35804
Telephone: (256) 536-7423
Facsimile: (256) 536-2689
watson@watsonjimmerson.com

SARAH GERAGHTY
Alabama Bar No. ASB-8047-A35G
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, GA 30303
Telephone: (404) 688-1202
Facsimile: (404) 688-9440
sgeraghty@schr.org

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing *First Amended Complaint* upon Defendants by causing a true and correct copy thereof to be delivered by U.S. mail, postage pre-paid, to Defendants at the following addresses:

**Arnold Holt**
9297 Springwood Court
Montgomery, AL 36117

**Dr. Joseph McGinn**
Kilby Correctional Center
12201 Wares Ferry Road
Montgomery, AL 36117

**Dr. Michael Robbins**
Kilby Correctional Center
12201 Wares Ferry Road
Montgomery, AL 36117

**MHM Correctional Services, Inc.**
1593 Spring Hill Road
Suite 610
Vienna, VA 22182

This 27th day of June, 2008.

<u>s/Sarah Geraghty</u>
Sarah Geraghty
Alabama Bar No. ASB-8047-A35G
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440